UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DERLING M.-G.,

               Petitioner,

v.

TODD BLANCHE, Acting Attorney
General, United States Department of
Justice; MARKWAYNE MULLIN,
Secretary, U.S. Department of Homeland
Security; TODD M. LYONS, Acting
Director of Immigration and Customs
Enforcement; and DAVID EASTERWOOD,
Field Office Director, St. Paul Field Office,
U.S. Immigration and Customs
Enforcement,

               Respondents.

Case No. 26-CV-2340 (PJS/DTS)

ORDER

---

Adam J. Kolb, GUSTAFSON GLUEK PLLC, for petitioner.

David W. Fuller and Jaymarie Arlene Miranda, UNITED STATES ATTORNEY'S OFFICE, for respondents.

This matter is before the Court on petitioner Derling M.-G.'s petition for a writ of habeas corpus.[1]  Derling, a citizen of Nicaragua, unlawfully entered the United States in November 2022.  V. Pet. ¶ 2.  Derling was apprehended near the border, detained for

---

[1]Pursuant to this District's policy in immigration cases, the Court identifies petitioner only by first name and last initials.

three days, and then released on parole due to lack of detention space. *Id.* ¶¶ 2, 26; ECF No. 6-1 at 2. Since his release, Derling has lived in Willmar, Minnesota. V. Pet. ¶ 25.

Derling has been arrested for driving while intoxicated ("DUI") four times since he entered the United States in 2022. ECF No. 6-1 at 2–3. He has been convicted and sentenced twice; two cases remain pending. *Id.* Derling was most recently convicted on January 28, 2026, and sentenced to 364 days of imprisonment, with 221 days stayed. *Id.*

On September 23, 2025, based on a biometric match with booking records at the Kandiyohi County Jail, U.S. Immigration and Customs Enforcement ("ICE") issued an I-200 administrative warrant and an immigration detainer for Derling. ECF No. 6-1 at 2–3; ECF Nos. 6-5, 6-6. ICE arrested Derling on February 24, 2026, at the Kandiyohi County Jail immediately after Derling finished serving his latest sentence. V. Pet. ¶ 29; ECF No. 6-1 at 2–3; ECF Nos. 6-5, 6-6. Derling was served with the warrant the same day and a Notice to Appear ("NTA") one day later. ECF Nos. 6-6, 6-7. The NTA states that Derling had "been admitted to the United States, but [is] removable," in relevant part because Derling was "paroled into the U.S.," but is now "not in possession of a valid unexpired immigrant visa . . . or other valid entry document." ECF No. 6-7. Derling remains detained at the Kandiyohi County Jail. V. Pet. ¶ 5.

In a declaration, deportation officer Geneva A. Balencia states that Derling's parole terminated on January 5, 2023. ECF No. 6 ¶ 4. Derling does not concede that his

parole has been terminated, and requests additional briefing or evidence on the issue. ECF No. 7 at 2–3.

Derling now seeks habeas relief in the form of release or a bond hearing, arguing that his detention is unlawful under the governing statute and regulations and under the Fourth and Fifth Amendments. *See* V. Pet. ¶¶ 32–55. For the following reasons, the Court denies the petition.

## I. ANALYSIS

### A. Mandatory Detention

In *Avila v. Bondi*, the Eighth Circuit held that an alien such as Derling who enters the United States unlawfully and is not "clearly and beyond a doubt entitled to be admitted" is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). 170 F.4th 1128, 1133, 1137–38 (8th Cir. 2026). When an alien is subject to mandatory detention but the government nevertheless chooses to release that alien on parole, any attempt by the government to revoke that parole must comply with the conditions set forth in 8 U.S.C. § 1182(d) and 8 C.F.R. § 212.5(e). *See Diego M.-Y. v. Olson*, No. 26-CV-2048 (PJS/DTS), ECF No. 9 at 5 (D. Minn. April 23, 2026) (explaining the interplay between § 1225, § 1182(d), and 8 C.F.R. § 212.5(e)); *Aldana v. Collins*, No. 26-CV-0335, 2026 WL 673827, at *3 (W.D. Tex. Mar. 9, 2026) ("Humanitarian parole is the form of release available

under the INA for an 'arriving' noncitizen who is subject to mandatory detention under § 1225(b)(2)(A)." (citations omitted)).

As this Court explained in *Diego M.-Y.*, under 8 C.F.R. § 212.5(e), the government must provide written notice of its decision to terminate an alien's parole except in the case of (1) departure of the alien from the United States, or (2) expiration of the time for which parole was authorized.  No. 26-CV-2048, ECF No. 9 at 5.  After parole is terminated, 8 U.S.C. § 1182(d)(5)(A) authorizes the return of an alien "to the custody from which he was paroled," at which point "his case shall continue to be dealt with in the same manner as that of any other applicant for admission . . . . "

The only evidence in the record regarding the termination of Derling's parole is the declaration of Officer Balencia, and she attests that Derling's parole terminated in 2023.  ECF No. 6 ¶ 4.  Without any evidence to the contrary—or any reason to doubt Officer Balencia—the Court credits her assertion.  As a result, no written notice was necessary to return Derling to custody.  In any event, Derling concedes that he was served with the NTA, and thus, even if he was entitled to notice, "[w]hen a charging document [such as an NTA] is served on the alien, the charging document will constitute written notice of termination of parole . . . ."  8 C.F.R. § 212.5(e)(2)(i).[2]

---

[2]In the NTA, Derling was designated as someone who "ha[s] been admitted to the United States, but [is] removable," which does not square with the language in 8 U.S.C. § 1182(d)(5)(A) that "parole . . . shall not be regarded as an admission."  *See*

(continued...)

Because Derling's parole was lawfully terminated, ICE had statutory authority to return him "to the custody from which he was paroled"—specifically, mandatory detention under § 1225(b)(2)(A).

### B. Fourth Amendment

Next, Derling claims that his Fourth Amendment right to be free from unreasonable searches and seizures was violated because (1) his arrest was warrantless, and (2) immigration officials did not have probable cause to effect a warrantless arrest under 8 U.S.C. § 1357(a)(2). V. Pet. ¶¶ 29, 48–55.[3] Derling does not, however, dispute that a valid warrant was issued for his arrest on September 8, 2025, months before he was arrested. Nor does Derling dispute that he was provided with a copy of that

---

[2](...continued)
*Dmytro K. v. Noem*, No. 26-CV-0556 (SHL/SGE), ECF No. 7 at 4–5 (D. Minn. Feb. 2, 2026) (explaining why none of the three charging designations available in an NTA cleanly apply to aliens previously released on parole). Still, in Derling's case, this designation was the best of the available options on the NTA form. Unlike the designation of "arriving alien" or "alien present in the United States who has not been admitted or paroled," the designation of Derling as a previously "admitted" but now removable alien at least conveys a change in status.

[3]Derling also argues that he has not received a custody determination within 48 hours of arrest. V. Pet. ¶ 54. But the regulations are clear that a warrant and an NTA can constitute such a determination. 8 C.F.R. § 287.3(d). As noted, Derling takes issue with the fact that the warrant was not served on him at the time of his arrest. He does not, however, deny that a valid warrant and valid NTA were provided to him within 48 hours of arrest. Thus, Derling received a timely custody determination.

warrant shortly after being arrested.  He complains only that the warrant was not served on him the moment that he was arrested.

This Court has previously held that when "the record establishes not only that a warrant was issued months before [an alien] was taken into custody, but that the warrant was served on [the alien] . . . shortly after his arrest," the alien has been arrested and detained pursuant to a valid warrant.  *See Kenneth Y. v. Bondi*, No. 26-CV-1877 (PJS/EMB), ECF No. 8 at 3–5 (D. Minn. Mar. 25, 2026).  Even if Derling's arrest was technically "warrantless" because, although authorized by a valid warrant, that warrant was not presented to him at the time of arrest, "ordering [Derling's] release would accomplish nothing meaningful" because ICE could immediately re-present him with the warrant "that was issued long before his arrest and that he was given shortly after his arrest."  *Id.* at 4–5.  Because Derling's arrest was lawful, his Fourth Amendment claims fail.

### C.  *Due Process*

Derling's remaining claims sound in due process.[4]  An alien who is physically present in the United States is a "person" who is protected by the Due Process Clause of the Fifth Amendment.  *Demore v. Kim*, 538 U.S. 510, 523 (2003); *see also Zadvydas v. Davis*,

---

[4]*Avila* did not reach the question of whether or when detention under § 1225(b)(2) violates the Due Process Clause of the Fifth Amendment.  170 F.4th at 1140 & n.8 (Erickson, J., dissenting).

533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").  "At the same time, . . . [the Supreme Court] has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."  *Demore*, 538 U.S. at 523.  The Eighth Circuit has also acknowledged that "the government has more flexibility when dealing with immigration" because the government may "make rules as to aliens that would be unacceptable if applied to citizens."  *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024).

Respondents argue that, under the precedents of the U.S. Supreme Court and the Eighth Circuit, mandatory detention under § 1225(b)(2) is categorically constitutional. Respondents point to the Eighth Circuit's statement in *Banyee* that it "has been clear for decades" that "detention during deportation proceedings is constitutionally valid." *Banyee*, 115 F.4th at 931.  Respondents also point to similar statements in *Demore*, 538 U.S. at 523, and *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020).

Recently, however, Judge Laura Provinzino carefully examined *Banyee*, *Demore*, and *Thuraissigiam*, and concluded that none of them preclude an alien's due-process challenge to being detained under § 1225(b)(2) without a bond hearing.  *See Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *6–10 (D.

Minn. May 18, 2026), *vacated*, ECF No. 21 (D. Minn. May 21, 2026) (vacating order granting habeas petition and judgment pursuant to joint stipulation after the petitioner received an administratively final removal order). As Judge Provinzino explained, the historically unprecedented scope of § 1225(b)(2)—which (as interpreted by the Eighth Circuit) mandates detention for each and every alien who is "seeking admission" to the United States—means that this situation is "meaningfully distinguishable from the cases on which the [g]overnment relies." *Id.* at *9–10. For the reasons explained by Judge Provinzino, this Court agrees that, even thought Derling is subject to mandatory detention under § 1225(b)(2), his detention might nevertheless violate the Due Process Clause.

### D. Mathews *Factors*

Having concluded that Derling's due-process challenge is viable, the Court must next determine whether his detention comports with due process by weighing (1) the private liberty interest at stake, (2) the risk of erroneous deprivation absent additional safeguards, and (3) the government's interest in continued detention. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).[5]

---

[5]Some courts have measured what process is due by examining an alien's "status and circumstances for the class of aliens he is in," rather than by examining the *Mathews* factors. *Singh v. Mullin*, No. 26-CV-0053, 2026 WL 1078710, at *3 (N.D. Iowa Apr. 20, 2026). The Court would reach the same conclusion in Derling's case under either approach.

### 1. Private Liberty Interest

This factor weighs in Derling's favor.  Derling is well integrated into his community, works honest jobs, attends church, and spends time at his neighborhood athletic club.  V. Pet. ¶ 27.  His detention takes him away from his community and deprives him of the basic liberties enjoyed by all free persons.  *See Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) (describing freedom from physical detention as the "most elemental of liberty interests").

### 2. Erroneous Deprivation

This factor is difficult to assess on the current record.  Under the circumstances of this case, however, it seems unlikely that "the challenged procedure creates a risk of erroneous deprivation of [Derling's] private rights" or that "alternative procedures could ameliorate these risks."  *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025).

Again, under *Avila*, Derling is subject to *mandatory* detention under 8 U.S.C. § 1225(b)(2)(A) if (1) he entered the United States unlawfully, and (2) he is not "clearly and beyond a doubt entitled to be admitted."  In most cases, ICE need do nothing more than consult its own records to determine if an alien has entered the United States without lawful authority.  Courts rely on those records many thousands of times each year.  Moreover, if it was "beyond a doubt" that an alien was "entitled to be admitted,"

presumably the alien *would* have been admitted.  It is difficult to know what Derling would gain from additional procedures.

Derling's initial release on parole likely created a liberty interest in his continued freedom from custody.  *See Yrysbaev v. Arnott*, No. 26-CV-3047, 2026 WL 395897, at *3 (W.D. Mo. Feb. 12, 2026) ("When the government grants an alien parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." (citations omitted)).  But, as explained above, Derling's parole expired long before he was arrested, so he was not deprived of this liberty interest.  Again, ICE's own records are the best evidence regarding whether a term of ICE parole has expired, and it is difficult to know what Derling would gain from additional procedures.

Finally, Derling has twice been convicted of DUI since his unlawful entry into the United States in 2022, after having received the "full procedural protections" of the criminal justice system.  *Jesus Alejandro G.A.*, 2026 WL 1383138, at *12 (citations omitted).

In short, in a typical case, all ICE needs to show to detain an alien such as Derling is that he did not lawfully enter the country—something that is rarely disputed, and that can best be proven by ICE's own records.  The risk of ICE getting this wrong—or additional procedures correcting any errors that are made—appears minimal.  There is simply no evidence that Derling's "detention is the direct result of insufficient

safeguards and lack of procedure," as Derling claims. ECF No. 7 at 11. Rather, Derling was detained because he entered the country illegally (which he does not deny) and therefore is subject to mandatory detention under *Avila* (which he does not deny).

### 3. Interest in Continued Detention

This factor favors respondents. "[E]nsuring that persons subject to removal do not commit crimes or evade law enforcement is a significant governmental interest." *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1153–54 (D. Minn. Aug. 15, 2025). On four occasions since Derling illegally entered the United States in 2022 he has been arrested for DUI. Twice he has been convicted; two charges are pending. The government has a significant interest in ensuring that Derling does not again endanger the lives of others by driving while impaired, especially because a past custodial sentence failed to deter him.

For these reasons, the Court finds that Derling's present detention pursuant to § 1225(b)(2) does not violate the Due Process Clause.[6]

---

[6]Derling makes a separate substantive due-process challenge, arguing that no governmental interest in detaining him could possibly outweigh his liberty interest in being free from custody. V. Pet. ¶¶ 39–47. The Court disagrees. *See Zadvydas*, 533 U.S. at 690–91 (identifying mitigating flight risk and preventing danger to the public as the legitimate purposes for immigration detention). Given Derling's DUIs, his continued detention pending removal proceedings "bears a reasonable relation" to the goal of protecting the public. *Zadvydas*, 533 U.S. at 690 (quotation omitted).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT petitioner's petition for a writ of habeas corpus [ECF

No. 1] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: May 29, 2026                          s/Patrick J. Schiltz
                                             Patrick J. Schiltz, Chief Judge
                                             United States District Court